**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

ZORAIDA ALEMAN, ROSA VELAZQUEZ, KIMBERLEY LADDA DALY, and ESTATE OF LISA OWENS, BY AND THROUGH DAVID OWENS, PERSONAL REPRESENTATIVE, individually, and as Representatives of a Class of Participants and Beneficiaries of the David Green, D.D.S., P.A. Profit Sharing Plan, David Green, D.D.S., P.A. 401(k) Plan, and the David Green, D.D.S., P.A. Pension Plan,

         Plaintiffs,

       vs.

DAVID GREEN, D.D.S., P.A., as fiduciary, trustee, and plan administrator of the David Green, D.D.S., P.A. Profit Sharing Plan, David Green, D.D.S., P.A. 401(k) Plan, and David Green, D.D.S., P.A. Pension Plan,

         Defendant.

Case No.: 25-80713-CIV-CANNON

**CLASS ACTION**

**AMENDED COMPLAINT UNDER 29 U.S.C § 1132**

Plaintiffs, Zoraida Aleman, Rosa Velazquez, Kimberley Ladda Daly, and David Owens ("Plaintiffs"), individually and as representatives of a Class of Participants and Beneficiaries of the David Green, D.D.S., P.A. Profit Sharing Plan ("Profit Sharing Plan"), David Green, D.D.S., P.A. 401(k) Plan ("401(k) Plan"), and the David Green, D.D.S., P.A. Pension Plan ("Pension Plan") (collectively, "Plans" or "Green Plans"), by their counsel, BURRI LAW, P.A., and COLEMAN LAW, PLLC allege and assert to the best of their knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the following:

1

**NATURE OF ACTION**

1.      This is an action under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq. ("ERISA"), to redress violations of fiduciary duties, prohibited transactions, and failure to provide required disclosures in connection with multiple employee benefit plans established and maintained by Defendant David Green, D.D.S., P.A ("Dr. Green").

2.      Plaintiffs seek equitable relief pursuant to ERISA §§ 502(a)(2), 502(a)(3), 29 U.S.C. § 1132(a)(2), (a)(3), and statutory penalties under ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), due to Dr. Green's failure to furnish required plan documents and for operating retirement plans in a manner that unjustly enriched Dr. Green to the exclusion of eligible employees.

3.      Plaintiffs are current and former employees of Dr. Green, or beneficiaries, and bring this action against Dr. Green, in his capacity as the fiduciary, trustee, and plan administrator, of the Green Plans, for failing to disclose the existence of the Green Plans to any of the Plaintiffs and the Class, as part of an unlawful, fraudulent scheme to conceal money to benefit himself and his family financially.

4.      As the fiduciary of Green Plans, Dr. Green had an obligation, characterized as the highest known to law, to fairly administer these Plans for his current and former employees that make up the Class, to act with a duty of loyalty and duty of care in providing them retirement  benefits under these Plans, and to not engage in prohibited transactions that amounted to self-dealing with the Plans' assets.

5.      Dr. Green violated his fiduciary duties of loyalty and care and engaged in party-in-interest and prohibited fiduciary transactions under ERISA by failing to disclose and inform

all members of the Class of the existence of the Green Plans, failing to provide the required Plan notices, failing to provide complete and accurate requested Plan documents or making such plan document requests impossible by concealing the plans, and by improperly failing to consider Plaintiffs and Class members for enrollment in the 401(k) Plan and Pension Plans.

6. As a result of this fiduciary misconduct and self-dealing, Plaintiffs and other Class members were unable to exercise their rights under the Green Plans and suffered grievous harm.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this suit arises under the laws of the United States, pursuant to 29 U.S.C. §1132(e)(1), which provide for federal jurisdiction of actions brought under Title I of ERISA.

8. This Court has personal jurisdiction over Defendant because Defendants transacts business in and has significant contacts with the District, and because ERISA provides for nationwide service of process pursuant to ERISA § 502(e), 29 U.S.C. § 1132(e)(2).

9. Venue is proper in this District pursuant to ERISA § 502(e), 29 U.S.C. § 1132(e)(2).  and 28 U.S.C. § 1391(b) and (c), because a substantial part of the events or omissions giving rise to the claims occurred in this District, and the Defendant may be found in this District

**PARTIES AND THE PLANS**

10. Plaintiff Zoraida Aleman is an individual who was employed by Dr. Green from January 3, 2015 to January 26, 2024, as a registered dental hygienist and office manager and was eligible to participate in all of the Green Plans, and was a "participant" in the Green Profit Sharing Plan under 29 U.S.C. § 1002(7).

3

11.     Plaintiff Estate of Lisa Owens, by and through David Owens, personal representative, whereby David Owens is an individual who was the spouse of Lisa Owens.  Lisa Owens was employed by Dr. Green for 8 years, from about 2014 – 2022, was eligible to participate in all of the Green Plans, and was a "participant" in the Green Profit Sharing Plan under 29 U.S.C. § 1002(7).

12.     During Mrs. Owens' last day of work in 2022 she had a medical event.  Dr. Green took her blood pressure and sent her to the hospital.  Two days later, Dr. Green fired her.

13.     Mrs. Owens was diagnosed with a brain condition and passed away.  At no time was she, or Mr. Owens, notified of her account in the Profit Sharing Plan.

14.     Plaintiff Kimberley Ladda Daly is an individual who was employed by Dr. Green from September 2016 to February 2019, as a registered dental hygienist and was eligible to participate in all of the Green Plans, and was a "participant" in the Green Profit Sharing Plan under 29 U.S.C. § 1002(7).

15.     Plaintiff Rosa Velazquez is an individual who was employed by Dr. Green in 2015, then returned in 2022, as a Dental Assistant, a Treatment Plan Coordinator, and a Dental Practice Manager and was eligible to participate in all of the Green Plans, and was a "participant" in the Green Profit Sharing Plan under 29 U.S.C. § 1002(7).

16.     Plaintiffs were added to Dr. Green's insurance and for holiday pay purposes, but were never offered participation in the 401(k) Plan or the Pension Plan.  They were never made aware of the existence of the Profit Sharing Plan or the other Green Plans.

17.     Plaintiffs never received any information regarding their participation in the Profit Sharing Plan during their employment with David Green, D.D.S., P.A.

4

18. At no time, from 2015-2024, did Plaintiffs' W-2s indicate that they were participants in any retirement plan in Box 13.

19. Defendant David Green, D.D.S., P.A. is a Florida Profit Corporation located at 11135 South Jog Road, Suite 3, Boynton Beach, Florida 33437. David Green, D.D.S., P.A. of Lake Worth is a Florida Profit Corporation located at 8746 Lake Worth Road, Bay 200, Lake Worth, Florida 33467. Dr. David Green ("Dr. Green") is the sole owner of David Green, D.D.S., P.A. and David Green, D.D.S., P.A. of Lake Worth.

20. Dr. Green is the current or former employer of Plaintiffs and Class members, and is the Plans' sponsor under 29 U.S.C. § 1002(16)(B), the Plan Administrator of the Green Plans within the meaning of 29 U.S.C. § 1002(16)(A), a named fiduciary of the Green Plans Plan within the meaning of 29 U.S.C. § 1102, and the trustee of the Green Plans.

21. Dr. Green is also a fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because he exercises discretionary authority or discretionary control respecting management of the Plans, and/or had discretionary authority or discretionary responsibility in the administration of the Plans.

22. The Green Profit Sharing Plan is a defined contribution employee benefit plan under 29 U.S.C. § 1002(2)(A) and § 1002(34). The effective date of the Profit Sharing Plan, stated in its Form 5500s, was January 1, 2007. The termination date is unknown.

23. The eligibility for the Profit Sharing Plan, included in the Summary of Major Plan Provisions, states: "Employees are eligible to enter on the January 1 or July 1 that is coincident with or next following the date the participant completes 1 years of service with 1000 hours." This eligibility is almost identical (save an age 21 requirement) to the eligibility

for the Pension Plan.  The prototype plan number for the Profit Sharing Plan is identical to the 401(k): Q702577A.

24.     To date, there is no evidence that Dr. Green properly invested any participant funds or properly allocated expense payments from participant accounts in the Profit Sharing Plan.

25.     The Green 401(k) Plan is a defined contribution employee benefit plan under 29 U.S.C. § 1002(2)(A) and § 1002(34).  The effective date of the 401(k) Plan, stated in its Form 5500s, was January 1, 2008.  The termination date is unknown.  The prototype plan number for the 401(k) is identical to the Profit Sharing Plan: Q702577A.

26.     The Green Pension Plan is a defined benefit employee benefit plan under 29 U.S.C. § 1002(2)(A) and § 1002(35). The effective date of the pension plan, stated in its Form 5500s, was January 1, 2004, and the termination date was August 7, 2020.

27.     The eligibility for the Pension Plan, included in the Summary of Major Plan Provisions attached to the Form 5500s, states: "Employees are eligible to enter on the January 1 or July 1 that is coincident with or next following the date the participant completes 12 months of service with 1000 hours and attains the age of 21."

28.     In 2019, the Pension Plan began termination and rolled over $1,717,739.00 into the Profit Sharing Plan.

29.     The termination was completed on August 8, 2020.  The bulk of this rollover was credited to Dr. Green's individual account.

30.     Plaintiffs have Article III standing to bring this action because they suffered actual injuries to their Plan accounts by not having being told of the existence of the Green Plans, not receiving required Plan disclosures, and/or not being offered eligibility in some of the

Green Plans. Those injuries are fairly traceable to Dr. Green disloyally, imprudently, and in a prohibited self-dealing manner, using the Plans' assets for his own benefit. These injuries diminished the savings in Plaintiffs' retirement accounts in the Plans and reduced, dollar for dollar (and more when compounded) Plaintiffs' retirement savings.

31.     Having established Article III standing, Plaintiffs may seek recovery under 29 U.S.C. § 1132(a)(2) and (a)(3), on behalf of the Plan and for relief that sweeps beyond their own injuries.

32.     The Plaintiffs and all participants in the Green Plans did not have knowledge of any of the material facts (including, among other things, the existence of the Green Plans) necessary to understand that Defendants breached their fiduciary duties and engaged in prohibited transactions until shortly before this suit was filed.

33.     Pursuant to 29 U.S.C. § 1113, and because this case involves both fraud and concealment, the Class period runs from six years prior to the filing of this Complaint and through the date of judgment.

34.     Plaintiffs are concurrently sending this Complaint to the U.S. Department of Labor and the U.S. Department of the Treasury as required under ERISA § 502(h).

### ERISA FIDICIARY AND PROHIBITED TRANSACTION STANDARDS

35.     ERISA exists, in large part, to protect the interests of participants, and their beneficiaries, in employee retirement plans. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (citing 29 U.S.C. § 1001(b)).

36.     ERISA imposes strict duties of loyalty and prudence upon fiduciaries of retirement plans, like the Green Plans, that are covered by ERISA.

37.     ERISA provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses

of administering the plan; [and] (B) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of like character and with like aims." ERISA § 404(a)(1)(A), (B), 29 U.S.C. § 1104(a)(1)(A), (B).

38. These fiduciary duties are "the highest known to the law." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).

39. As the United States Supreme Court held in *Varity Corp. v. Howe*, 516 U.S. 489, 502 (1996), "[c]onveying information about the likely future of plan benefits, thereby permitting beneficiaries to make an informed choice about continued participation, would seem to be an exercise of a power 'appropriate' to carrying out an important plan purpose."

40. In the Eleventh Circuit, a duty to inform claim generally arises under the fiduciary duties imposed by ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1). This includes a duty to disclose material information to plan participants. Of course, it is hard to imagine anything more material to plan participants then the very existence of retirement plans of which they are participants or of which they could be participants.

41. A fiduciary has a duty to inform when: (1) silence or failure to inform would be misleading; or (2) the fiduciary knows or should know that its failure to disclose might harm participants. In other words, "[a] fiduciary has a duty not to misinform and an affirmative duty to inform when silence might be harmful." See *Jones v. American Gen. Life & Acc. Ins. Co.*, 370 F.3d 1065, 1072 (11th Cir. 2004).

42. Although the Eleventh Circuit distinguishes between requested and unrequested information, there is typically a duty to provide information that was not requested when the fiduciary knows that silence would mislead the participant. *See Jones*, 370 F.3d at 1072.

43. Of course, Plaintiffs could not request information about Plans that they did not even know existed, and of course, Dr. Green knew his silence would mislead participants and other eligible employees.

44.     Had the nondisclosure of the Plans' existence not occurred, the outcome would have been different in that Plaintiffs and the Class would have been able to challenge their eligibility to participate in the 401(k) and Pension Plans, and they could have exercised additional rights under the Profit Sharing Plan (like taking out loans or hardship distributions or making other decisions with regard to their retirement monies).

45.     ERISA requires plan administrators to: (1) notify eligible employees of the existence of the plan; (2) provide a Summary Plan Description (SPD) to each participant; and (3) furnish other required documents such as summary annual reports, plan documents upon request, and benefit statements, among other requirements.

46.     Failing to notify employees that they are eligible for or covered under a retirement plan violate these ERISA requirements

47.     This information that Dr. Green failed to disclose to Plaintiffs and the Class about the existence of the Green Plans was material because there was a substantial likelihood that the lack of information about the Plans would mislead a reasonable participant in making an adequately informed decision with regard to their rights under the Plans. *See Varity Corp.*, 516 U.S. 489.

48.     Not informing Plaintiffs and the Class about the existence of any of the Green Plans for the entire Class Period violates Dr. Greens' fiduciary duty to inform under ERISA because his silence caused Plaintiffs to be harmed by not knowing of their existing accounts or their ability to challenge their eligibility in Plans in which they were not enrolled.

49.     Dr. Green is an ERISA fiduciary as he exercise discretionary oversight, authority, and control over the Green Plans that he sponsors and provides to his employees.

50.     Dr. Green failed to fulfill his duty to loyally and prudently control the manner in which the Green Plan were operated by failing to disclose their existence to employees, properly communicate about the Plans with participants, properly determine eligibility for the Plans, and by failing to provide requested plan documents in a timely manner.

51.     Plaintiffs thus seek equitable relief in the form of surcharge, reformation, estoppel, declaratory relief, and injunctions to enforce their rights under the Green Plans. *See CIGNA Corp. v. Amara*, 563 U.S. 421 (2011).

52.     Dr. Green is also a party-in-interest under ERISA because he is an employer "any of whose employees are covered by such plan." *Id.*, § 1002(14)(C).

53.     Because Dr. Green is a fiduciary of the Plan and "deal[t] with the assets of the plan in his own interest or for his own account," he violated the fiduciary duty of loyalty and engaged in prohibited transactions under both 29 U.S.C. § 1106(a)(1)(D) and 29 U.S.C. § 1106(b)(1), by benefiting himself as far as granting himself unlawful retirement benefits under the Green Plans.

## FACTUAL ALLEGATIONS

## DUTY TO INFORM OF THE GREEN PLANS' EXISTENCE TO CLASS

54.     Dr. Green established all the Green Plans as early as 2004 but did not communicate with his employees then or until recently, that such Plans existed.

55.     For instance, accordingly to the Plans' 5500 Forms filed with U.S. Department of Labor, with regard to the Green 401(k) Plan there were 4 participants in 2012 and 7 participants in 2021; with regard to the Green Pension Plan there were 4 participants in 2012 and 8 participants in 2020; and with regard to the Green Profit Sharing Plan there were 9 participants in 2012 and 105 participants in 2023.

56.     None of the Plaintiffs knew that any of the Green Plans existed until 2025.

57.     Dr. Green actively concealed the existence of the Green Plans from Plaintiffs and the Class.

58.     For instance, at no time, from 2015-2024, did Plaintiffs' W-2s, Box 13, indicate that they were participants in any retirement plan.

10

59.     During Plaintiffs' employment, Dr. Green maintained three employee retirement benefit plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq: the Pension Plan, the 401(k) Plan, and the Profit-Sharing Plan.

60.     The Plans provided retirement benefits, and were sponsored, administered, and funded in whole by Dr. Green.

61.     At all relevant times, Plaintiffs were participants, or were eligible to become participants, in the Green Plans by virtue of their employment status, hours worked, and classification under the eligibility provisions of the Plans.

62.     Despite Plaintiffs' eligibility, Dr. Green never informed Plaintiffs of the existence of the Green Plans.

63.     Plaintiffs were not provided SPDs, enrollment materials, or any other written or oral communications indicating that they had access to ERISA-covered benefits until 2025.

64.     Plaintiffs were also not informed of any procedures for electing coverage, submitting claims, or appealing benefit denials under the Plan. No open enrollment information or Plan documents were distributed.

65.     Dr. Green's failure to disclose the Greens Plan was not an isolated error or clerical oversight. Dr. Green engaged in a consistent, deliberate, and fraudulent, pattern of failing to notify eligible employees of the Plans' existence, thereby concealing the availability of benefits from his workforce.

66.     For instance, during every year, from 2009 – 2024, Dr. Green signed under penalties of perjury, and answered "no" to the following Complaint Questions in Part V of the Form 5500 for the Profit Sharing Plan:

- Was there a failure to transmit to the plan any participant contributions within the time period described in 29 CFR 2510.3-102?

- Were there any nonexempt transactions with any party-in-interest?
- Did the plan have a loss, whether or not reimbursed by the plan's fidelity bond, that was caused by fraud or dishonesty?
- Has the plan failed to provide any benefit when due under the plan?

67. During every year, from 2009 – 2020, Dr. Green signed under penalties of perjury, and answered "no" to the following Complaint Questions in Part V of the Form 5500 for the Pension Plan:

- Was there a failure to transmit to the plan any participant contributions within the time period described in 29 CFR 2510.3-102?
- Were there any nonexempt transactions with any party-in-interest?
- Did the plan have a loss, whether or not reimbursed by the plan's fidelity bond, that was caused by fraud or dishonesty?
- Has the plan failed to provide any benefit when due under the plan?

68. During every year, from 2009 – 2024, Dr. Green signed under penalties of perjury, and answered "no" to the following Complaint Questions in Part V of the Form 5500 for the 401(k) Plan:

- Was there a failure to transmit to the plan any participant contributions within the time period described in 29 CFR 2510.3-102?
- Were there any nonexempt transactions with any party-in-interest?
- Did the plan have a loss, whether or not reimbursed by the plan's fidelity bond, that was caused by fraud or dishonesty?
- Has the plan failed to provide any benefit when due under the plan?

69. On April 2, 2025, at a dinner as friends, Plaintiff Aleman was given paperwork by Dr. Green's secretary/office manager, Maria Caceres, entitled "Re: The benefit you are entitled to under the David Green, D.D.S., P.A. Profit Sharing Plan."

70. That document stated: "The value of your vested account balance from the terminated plan is $17,582.12 plus gains/losses to date of distribution."  Plaintiff Aleman was also given documents for her signature titled "Participant Release Agreement" and "Election of Direct Rollover for Qualifying Distribution."

71. The Participant Release Agreement form contains a broad release stating in pertinent that, "I hereby release the Plan Administrator, Trustee(s) and David Green, D.D.S. P.A. from and against any and all claims the undersigned may have or hereafter claim to have against said Administrator, Trustee(s) and David Green, D.D.S., P.A. with respect to my interest in said Trust."

72. Plaintiff Aleman did not sign this Release, or any other paperwork with respect to the Green Plans. This type of release language for a participant to simply receive their vested benefits is unenforceable without other consideration above and beyond vested benefits.

73. Plaintiff Aleman's initial reaction was shock and gratitude, as she had no idea these moneys existed prior to being given this paperwork on April 2, 2025.

74. On or around April 3, 2025, Dr. Green discovered Ms. Caceres had begun the process of handing out termination benefits paperwork to the affected Green Profit Sharing Plan participants, and became very angry, screaming at Ms. Caceres for doing so.

75. Dr. Green later changed his tone and told Ms. Caceres that he was going to surprise the employees with the retirement funds for Christmas.

76. Under information and belief, Dr. Green never intended to inform the participants of their vested benefits under any of the Green Plans.

77. Plaintiff Aleman forwarded the Profit Sharing Plan paperwork to her financial planner. He informed her the forms were not correct or legal, and attempted to contact Dr. Green, the plan administrator, on April 10, 2025. That same day, Plaintiff Aleman was told by Ms. Caceres, the office manager, to tell her financial planner to stop trying to contact Dr. Green.

78. As a result of Dr. Green's concealment of the Green Plans, Plaintiffs were unaware that they had rights under the Plans, and they therefore took no steps to assert or

13

protect those rights, contesting their eligibility for such Plans, timely submitting claims for benefits, seeking loans under the Plans, or making requests for plan documents under ERISA § 104(b), 29 U.S.C. § 1024(b).

79.     Plaintiffs also lost significant legal monies and will now incur significant legal fees as a result of not knowing of the existence of the Green Plans for purposes of participant divorces, bankruptcies, and deaths, in participants' families.

80.     Had Plaintiffs been properly informed of the Green Plans and their rights under them, they would have enrolled, sought plan documents, submitted claims for benefits, and exercised other plan rights surrounding various major life events, and they would not have suffered the financial harm caused by Dr. Green's fraud and concealment.

81.     Dr. Green's misconduct caused Plaintiffs to lose access to retirement benefits to which they were entitled and deprived them of their statutory protections ERISA was enacted to guarantee.

82.     On information and belief, Dr. Green has treated the Green Plans as a piggy bank for his own use, and failed to administer the Green Plans in any way.

83.     On information and belief, the Green Plans were fraudulently created and administered to maximize Dr. Green's own retirement funds and to evade income taxes, while rewarding a select few employees like Dr. Green's wife, Deborah Green, who was an employee of his and a Plan participant.

84.     On information and belief, Dr. Green paid out exorbitant fees (to an unknown source) for the Profit Sharing Plan in 2020, 2021, and 2023, for a Plan that was not being actively administered. As there is no accounting available, it may be that Dr. Green paid these fees to himself.  It is very unusual for an ERISA plan to not have annual fees for administration.

85.     As of December 31, 2024, Dr. Green's account balance in the Profit Sharing Plan was $2,802,229.85.  His wife's account balance was $129,412.99.  The total assets in the Profit Sharing Plan were $3,606,722.69.  Dr. Green and his wife's accounts constituted over 81% of the plan assets, even though there were over 100 other participants with account balances as recently as 2023.

86.     As discussed below, this imbalance in plan accounts in the Profit Sharing Plan clearly violates the IRS non-discrimination rules for qualified plans and places the qualification status of the Plan in jeopardy.

87.     On information and belief, Dr. Green intended to keep all of the assets in the Profit Sharing and 401(k) Plan upon termination for himself, as he did with the Pension Plan. This is why he became so angry at Ms. Caceres for handing out the benefits paperwork to participants in April 2025.

**DUTY TO RESPOND TO PLAN DOCUMENT REQUESTS**

88.     Dr. Green, as the designated Plan Administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A), had the duty to furnish certain documents upon request by a participant or beneficiary of the Green Plans.

89.     Because Plaintiff Aleman did not know of the existence of the Profit Sharing Plan until April 2, 2025, she did not submit a plan document request until April 28, 2025.

90.     Had she known of the existence of the Plan, she would have asked for Plan documents as early as when she became a participant in 2015.

91.     Other members of the Class who were eligible when the Green Profit Sharing Plan was first established in January 2007 would have requested plan documents at that time if the Plan had not been concealed from them.

15

92.     Neither Plaintiff Aleman nor other Class members should be prejudiced by the fact that Dr. Green concealed the existence of the Green Profit Sharing Plan from January 2007 until April 2025.

93.     Equity requires that Plaintiff Aleman and Class members be eligible for statutory penalties thirty (30) days after the time they first become participants in the Green Profit Sharing Plan and had a statutory right to request plan documents.

94.     In Ms. Aleman's written plan document request of April 28, 2025, she requested copies of the following documents under the Green Plans pursuant to ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4): (1) the Plan documents; (2) SPDs; (3) any trust agreements or funding instruments; (4) any amendments or modifications to the Plans; (5) annual reports (Forms 5500) filed in the past six years; and (5) any other instruments under which the Plans are established or operated.

95.     Plaintiff Aleman's request was sent via certified mail and by email to the address and/or contact designated for Dr. Green. The requests clearly referenced ERISA and Plaintiff Aleman's rights under Section 104(b)(4), and the statutory 30 day deadline for production.

96.     On May 28, 2025, at the very last minute, Dr. Green responded by producing incomplete and suspicious documents.

97.     For instance, the adoption agreement document produced by Dr. Green was inconsistent with the Green Profit Sharing Plan "fee disclosure" received previously by Plaintiff Aleman from Daisy at the Penn Pension Center in April 2025.  This "fee disclosure" Plaintiff Aleman was provided was actually a page from the Green Profit Sharing Plan adoption agreement, and was represented to her by the Penn Pension Center as "the Plan."  This "fee disclosure" indicated that the Green Profit Sharing plan had participant directed investments.

16

When Dr. Green sent the purported same document that Plaintiff Aleman received previously from the Penn Pension Center in April 2025, that same page of "the Plan" had different boxes checked, the Plan no longer had participant directed investments, and neither the document from the Penn Pension Center nor from Dr. Green were signed as they should have been.

98.     The "benefit statements" provided by Dr. Green to Plaintiff Aleman indicated contributions were made to her account in years where the Form 5500 states there were $0 in contributions.

99.     Dr. Green also failed to produce the Basic Plan Document that matches the Adoption Agreement provided, until June 5, 2025.  Dr. Green only produced three years of "benefit statements."  Dr. Green also failed to produce any communications sent to Plaintiff Aleman regarding the Plan, including any required annual disclosures.

100.    These mismatched documents indicate that the documents produced were either not originals or somehow altered by Dr. Green or agents working on his behalf.

101.    Moreover, Dr. Green only provided Profit Sharing documents, and failed to provide 401(k) or Pension Plan documents, even though Plaintiff Aleman sought these documents to determine whether she had wrongly been denied eligibility in these plans as early as 2015 when she started employment.

102.    When Plaintiff Aleman's counsel ask for clarification concerning the incomplete and suspicious nature of the Plan document production, he was met with silence and no response.

103.    Equity requires that Plaintiff Aleman still be eligible for statutory penalties given Dr. Green's failure to satisfy his full obligations under ERISA Section 104(b)(4).

104. On June 2, 2025, the remaining Plaintiffs sent plan document requests for all the same Green Plan documents as Plaintiff Aleman. Dr. Green's response is due July 2, 2025.

105. Dr. Green's failure to comply with Plaintiff Aleman's lawful request was not due to matters reasonably beyond his control, and no explanation for the failure has been provided.

106. As a result of Dr. Green's failure to provide complete and bona fide documents, Plaintiff Aleman has been unable to: (1) determine the vested benefits to which she is entitled; (2) understand the Plans' terms, eligibility rules, or vesting schedules; (3) prepare or pursue a claim for retirement benefits; or (4) evaluate whether the Plan has been operated in compliance with ERISA.

107. Under ERISA § 502(c)(1)(B), 29 U.S.C. § 1132(c)(1)(B), Defendants are liable for statutory penalties of up to $110 per day for each day a complete and accurate set of the requested documents were not furnished after the expiration of the 30-day period following the request.

108. Moreover, the other Plaintiffs and Class Members who have not yet made document requests are still eligible for statutory penalties of up to $110 per day for each day a complete and accurate set of the requested documents were not furnished because they were unable to even make such a request given Dr. Green's concealment of the Profit Sharing Plan's existence.

109. In addition to statutory penalties, Defendants' conduct constitutes a breach of fiduciary duty under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), entitling Plaintiff to equitable relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), including but not limited to surcharge, reformation, and other relief deemed just and proper by the Court.

## PROHIBITED TRANSACTIONS AND THE DUTY OF LOYALTY

110.    Plaintiffs were employed by Dr. Green and, by virtue of their employment, either became participants in the Green Plan or became eligible to enroll in them. All of the Green Plans are employee pension benefit plans governed by ERISA, ERISA § 3(2), 29 U.S.C. § 1002(2).

111.    Dr. Green serves as both the Plan Sponsor and the Plan Administrator of all the Green Plans, and therefore exercises discretionary authority and control over the Plans and their assets. Dr. Green is thus a fiduciary within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21).

112.    Dr. Green is also a "party in interest" under ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A), by virtue of his role as the employer whose employees are covered by, or eligible to be enrolled in, the Greens Plans and as a fiduciary of those Plans.

113.    During the relevant period, Dr. Green improperly used assets of the Green Plans to advance his own individual interests, including to reduce or avoid federal and/or state tax obligations.

114.    Specifically, upon information and belief, Dr. Green: (a) retained forfeitures of unvested contributions and used them to offset future employer contributions, thereby reducing the company's required tax-deductible funding obligations; (b) commingled plan assets with his professional and individual accounts, thereby using participant funds to support his dental operations and his personal interests; (c) applied plan credits or overfunding toward employer tax reporting in a manner inconsistent with exclusive benefit requirements; and (d) failed to remit contributions to the Green Plans on a timely basis, effectively using withheld contributions as working capital.

19

115. These actions constituted direct or indirect transfers to, or use by or for the benefit of, a party in interest of assets of the Plan in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

116. Dr. Green also engaged in self-dealing by using Green Plans' assets in a manner that directly benefited himself and not Plan participants, in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1).

117. Dr. Green's conduct was not disclosed to the Green Plans' participants and beneficiaries and was undertaken without regard to their interests or rights under the Green Plans.

118. As a result of these actions, the Plan and its participants suffered harm, including but not limited to: (a) a reduction in available Plan assets; (b) impaired investment performance or funding ratios; (c) distorted financial disclosures or Form 5500 filings; and (d) loss of tax-preferred retirement savings benefits.

119. Dr. Green's actions were not in furtherance of the Green Plans' purposes to provide retirement benefits to participants, but rather served his own financial interests, including reducing his individual and professional tax burdens.

120. Dr. Green's use of the Green Plans' assets for his own benefit constitutes a prohibited transaction under ERISA § 406 and a breach of fiduciary duty of loyalty under ERISA § 404(a)(1)(A).

**ERISA NON-DISCRIMINATION REQUIREMENTS AND FIDUCIARY DUTIES**

121. ERISA fiduciary obligations under § 404(a)(1) incorporate compliance with plan qualification requirements, including nondiscrimination rules, when failure to comply results in harm to participants.

122.    Plaintiffs are non-highly compensated employee (NHCE) and participants in the Green Profit Sharing Plan, a defined contribution retirement plan governed by ERISA, and were eligible to enroll in the Green 401(k) Plan and Green Pension Plan, a defined contribution retirement plan and a defined benefit retirement plan governed by ERISA, and all of which were intended to qualify under Internal Revenue Code § 401(a).

123.    Some or all of the Green Plans provide for employer matching and/or profit-sharing contributions and permits employee elective deferrals subject to annual nondiscrimination testing under Internal Revenue Code §§ 401(k), 401(m), and 401(a)(4).

124.    At all relevant times, Dr. Green knowingly and repeatedly operated the Green Plans in a manner that favored highly compensated employees (HCEs), primarily himself and his wife, over NHCEs like Plaintiffs and the Class.

125.    Upon information and belief, Dr. Green failed to (a) conduct or document annual nondiscrimination testing (e.g., ADP/ACP tests) required under Internal Revenue Code § 401(k) and (m); (b) allowed HCEs to defer compensation at the maximum permitted rate, while imposing informal or de facto restrictions on NHCE deferrals (e.g., not informing them of options, obstructing enrollment); (c) provided employer matching and discretionary contributions only to HCE accounts or at substantially higher rates than to NHCEs, without regard to the Plans' terms; (d) failed to refund excess contributions or correct ADP/ACP test failures through appropriate distributions or recharacterizations, causing discrimination in plan benefits; (e) allowed key employees to receive accelerated vesting or discretionary bonuses deposited directly into retirement accounts, while similarly situated NHCEs received none; and (f) ignored internal warnings or compliance officer recommendations regarding likely test failures and nondiscriminatory plan administration.

126. Dr. Green did not implement corrective measures as required by IRS regulations (e.g., recharacterizing excess contributions, making qualified nonelective contributions (QNECs) to NHCEs, or amending plan terms to eliminate discriminatory features).

127. The result of this conduct was that HCEs, primarily Dr. Green himself and his wife, received a disproportionate share of the Green Plans' benefits, while Plaintiffs and similarly situated NHCEs were either under-enrolled, received reduced or no matching contributions, or were otherwise disadvantaged.

128. Dr. Green's conduct placed the Plans' tax-qualified status at risk and caused actual harm to NHCEs by depriving them of employer contributions, deferrals, and compound investment gains they otherwise would have received.

129. Dr. Green's self-dealing in violation of nondiscrimination requirements was not inadvertent. It reflected a pattern of discriminatory plan administration carried out to benefit himself, and was done at the expense of rank-and-file employees.

130. These actions were taken with full knowledge of the nondiscrimination obligations imposed by the Internal Revenue Code and violated Defendant's fiduciary duties under ERISA § 404(a)(1) to act solely in the interest of all Plan participants, follow the governing documents of the Plan, and preserve the Plan's tax-qualified status and ensure equitable administration.

131. Dr. Green has used the Green Plans' assets or the tax benefits of the Plans in a manner inconsistent with the exclusive benefit rule, in violation of ERISA §§ 403 and 404, 29 U.S.C. §§ 1103, 1104.

132. Dr. Green's discriminatory conduct breached his fiduciary duty under ERISA § 404(a)(1) by: (a) failing to act solely in the interest of all of the Green Plans' participants; (b)

22

placing Dr. Green's personal preferences ahead of uniform plan administration; and (c) administering the Plan in a manner that was arbitrary, capricious, and imprudent.

133.    Dr. Green's actions also undermined the integrity of the Green Plans' fiduciary structure and created an environment in which the Plans' benefits were distributed based on Dr. Green's personal and financial interests rather than based on the Plans' terms and participant status.

## CLASS ACTION ALLEGATIONS

134.    Plaintiffs brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure and S.D. Fla. Local Rule 23.1 on behalf of themselves and all others similarly situated.

135.    The proposed class is defined as:

All current and former employees of David Green, D.D.S., P.A., and their beneficiaries, who were eligible to participate in the David Green, D.D.S., P.A. Profit Sharing Plan, the David Green, D.D.S., P.A. 401(k) Plan, and/or the David Green, D.D.S., P.A. Pension Plan, at any time during the Class Period but were not informed of the existence of these Plans or their rights thereunder.

136.    Excluded from the Class are: (a) Dr. Green and his affiliates; and (b) any members of the immediate family of Dr. Green.

137.    This action satisfies the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a), and is maintainable under Rules 23(b)(1)(A) and (B), and/or 23(b)(2).

138.    The members of the proposed Class are so numerous that joinder of all members is impracticable. The Class consists of at least 105 participants who were members of the Green Profit Sharing Plan, and who, like Plaintiffs, were eligible for retirement benefits under the Green Plans but were not informed of the Plans' existences.

139. There are questions of law and fact common to the Class, including but not limited to: (1) whether Dr. Green acted as a fiduciary under ERISA; (2) whether Dr. Green had a duty to disclose the existence of the Green Plans to eligible employees; (3) whether Dr. Green engaged in party-in-interest and fiduciary prohibited transactions under ERISA by benefitting himself with the Plans' assets as both fiduciary to the Plans and as the plan sponsor (employer) of the Plans; (4) whether Class members were harmed as a result of Dr. Green's failure to disclose the existence of the Plans; (5) whether Plaintiffs and class members are entitled to statutory penalties based on the concealment of the Green Plans and their inability to make document requests; and (6) whether Dr. Green's conduct warrants equitable relief under ERISA §§ 502(a)(2) and (a)(3), including surcharge, estoppel, reformation, declaratory, and other appropriate equitable relief.

140. Plaintiffs' claims are typical of the claims of the Class. Like other members of the Class, Plaintiffs were employed by Dr. Green, met the eligibility requirements for participation in the Green Plans, and were not informed of the Plans' existence or of their rights under the Plans.

141. Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have no conflict with other members of the Class and have retained competent counsel experienced in ERISA litigation and class actions.

142. Prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants and thus, makes this Class certifiable under either Rule 23(b)(1)(A) or 23(b)(1)(B).

143. Because Dr. Green acted or refused to act on grounds generally applicable to the Class, making declaratory and injunctive relief appropriate with respect to the Class as a whole, the Class is certifiable also under Rule 23(b)(2).

144. The claims brought by the Plaintiffs arise from fiduciary breaches and prohibited transactions as to the Green Plans in their entirety and do not involve mismanagement of individual accounts.

145. The claims asserted on behalf of the Plans in this case fall outside the scope of any exhaustion language in the individual participants' Plans.

146. Exhaustion is intended to serve as an administrative procedure for participants and beneficiaries whose claims have been denied and not where a participant or beneficiary brings suit on behalf of a Plan for breaches of fiduciary duty.

147. Under ERISA, an individual "participant" or "beneficiary" is distinct from an ERISA Plan. A participant's obligation – such as a requirement to exhaust administrative remedies – does not, by itself, bind the Plan.

148. Moreover, any administrative appeal would be futile because the entity hearing the appeal (the Plan Administrator) is the same Plan Administrator that made the decisions that are at issue in this lawsuit.

149. Policy supporting exhaustion of administrative remedies in certain circumstances – that the Court should review and where appropriate defer to a Plan administrator's decision – does not exist here because courts will not defer to Plan administrator's legal analysis and interpretation. *See Curry v. Contract Fabricators, Inc. Profit Sharing Plan*, 891 F.2d 842, 846-47 (11th Cir. 1990) ("When a plan administrator in control of the available review procedures

denies a claimant meaningful access to those procedures, the district court has discretion not to require exhaustion.").

150. Nevertheless, and out of an abundance of caution, Plaintiff Aleman filed a claim under the Green Plans on May 20, 2025, exercising her claim rights under ERISA and the Green Plans to seek an accounting for the retirement benefits she is properly owed under the Profit Sharing Plan, and for a determination whether she was improperly denied eligibility to participate in the 401(k) Plan and the Pension Plan.

151. Dr. Green, as the Green Plans' fiduciary and sole plan administrator, never responded to Plaintiff Aleman's claim of May 20, 2025.

152. Courts have repeatedly recognized that in the ERISA class action context, exhaustion by one of the named plaintiffs suffices to proceed on behalf of similarly situated participants, especially here where the claims challenge the legality or administration of the plan as a whole, rather than individual benefit disputes. *In re Managed Care Litigation*, 595 F. Supp. 2d 1349 (S.D. Fla. 2009).

153. Accordingly, Plaintiff has satisfied all conditions precedent to the filing of this action, and no further exhaustion of administrative remedies by absent class members is required.

**COUNT ONE: BREACH OF FIDUCIARY DUTY –
FAILURE TO DISCLOSE MATERIAL INFORMATION
(ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3))**

154. Plaintiffs re-allege and incorporate by reference paragraphs 1-48 and 54-87.

155. At all relevant times, Dr. Green acted as a fiduciary of the Green Plans within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), in that he exercised discretionary authority and control over the administration of the Green Plan and management of their assets.

26

156.    ERISA imposes upon plan fiduciaries an affirmative duty to inform participants of material facts affecting their benefits, including the existence of the plan itself, eligibility criteria, and the procedures for claiming benefits, pursuant to ERISA § 104(b), 29 U.S.C. § 1024(b), and fiduciary duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

157.    As fiduciaries, Dr. Green was required to act solely in the interest of participants and beneficiaries of the Green Plans and to discharge his duties with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity would use.

158.    In the Eleventh Circuit, fiduciaries may be liable for failing to inform participants of material facts affecting benefits, even if no formal request is made, where the information is not otherwise accessible to the participant and is necessary to prevent misunderstanding or prejudice. *See Jones v. American General Life & Accident Ins. Co.*, 370 F.3d 1065, 1072 (11th Cir. 2004).

159.    Dr. Green failed to inform Plaintiffs, and similarly situated employees, of the existence of the Green Plans, thereby depriving Plaintiffs and the Class of the opportunity to make informed decisions regarding their benefits, including with regard to making plan document requests and with regard to major life events, such as divorce, bankruptcy, or death.

160.    Plaintiffs met all eligibility requirements for participation in all of the  Green Plans during their employment with Dr. Green but were never informed of the Green Plans, never received SPDs, and were never provided any information regarding their eligibility, benefits, or the process for obtaining coverage or making claims.

161.    As a direct and proximate result of Dr. Green's failure to disclose the existence of the Green Plans, Plaintiffs were materially prejudiced and suffered harm, including but not

limited to loss of benefits, inability to submit timely plan document requests, inability to submit timely claims, and deprivation of their ERISA-protected rights.

162.     Dr. Green's failure to disclose the Plans' existence constitutes a breach of his fiduciary duties under ERISA § 404(a)(1)(A), (B), including the duties of loyalty and prudence.

163.     Dr. Green knew or should have known that certain information regarding the existence of the Plans, including the availability of benefits, the terms of coverage, the effect of employment status on benefit eligibility, or the existence of Plan documents, was material to Plaintiffs' understanding of their rights under the Plans.

164.     Despite this knowledge, Dr. Green intentionally failed to inform Plaintiffs of this material information in order to benefit from the Green Plans for his own and his family's benefit.

165.     At no time before 2025 did Plaintiffs possess actual knowledge of the material fact of the Plans existence, nor could they have reasonably discovered them through ordinary diligence absent disclosure by Dr. Green.

166.     As a direct and proximate result of Dr. Green's failure to disclose material information about the Green Plans and their existence, Plaintiffs failed to take timely action to request plan documents, preserve benefits, was deprived of the opportunity to make informed decisions about their benefits, incurred losses by not withdrawing retirement monies, and suffered harm by not being able to take advantage of the Plans' provisions (including those involving Plan loans, hardship distributions, and selecting beneficiaries).

167.     Dr. Green's conduct constitutes a breach of their fiduciary duties of loyalty and prudence under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), and is actionable under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

168.    Plaintiffs seeks appropriate equitable relief, including but not limited to: (1) surcharge against Dr. Green for monetary relief to make Plaintiffs whole for the losses proximately caused by the fiduciary breaches; (2) reformation of any Plan terms or procedures that purport to limit Plaintiffs' rights in ways inconsistent with ERISA or the fiduciary duty of full and fair disclosure; (3) equitable estoppel to prevent Dr. Green from asserting procedural or substantive defenses resulting from his own failure to disclose the Plan; (4) declaratory Relief: confirming Plaintiffs' rights as participants under the Plan; and (5) such other and further relief as the Court deems just and proper.

## COUNT TWO: FAILURE TO PROVIDE PLAN DOCUMENTS
### (ERISA § 502(c)(1)(B), 29 U.S.C. § 1132(c)(1)(B))

169.    Plaintiffs re-allege and incorporate by reference paragraphs 1-34 and 88-109.

170.    Plaintiff Aleman made a valid written request on April 28, 2025, to the Plan Administrator, pursuant to ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), seeking documents related to her pension benefit plans under the Green Plans, including the Plan documents, Summary Plan Descriptions (SPDs), amendments, and other governing instruments.

171.    More than thirty (30) days have passed since Plaintiff Aleman's request, and Dr. Green has failed or refused to furnish a complete and accurate set of requested documents, in violation of ERISA § 104(b)(4) and § 502(c)(1), 29 U.S.C. § 1132(c)(1).

172.    More specifically, Dr. Green only provided some Profit Sharing documents, and failed to provide 401(k) or Pension Plan documents, even though Plaintiff Aleman sought these documents to determine whether she had wrongly been denied eligibility in these plans as early as 2015 when she started employment.

173.    When Plaintiff Aleman's counsel asked for clarification concerning the incomplete and suspicious nature of the Plan document production, he was met with silence and no response.

174.    Equity requires that Plaintiff Aleman still be eligible for statutory penalties given Dr. Green's failure to satisfy his full obligations under ERISA Section 104(b)(4).

175.    On June 2, 2025, the remaining Plaintiffs sent plan document requests for all the same Green Plan documents as Plaintiff Aleman. Dr. Green's response is due July 2, 2025.

176.    Dr. Green's failure to respond was not due to matters reasonably beyond his control.

177.    Other members of the Class who were eligible when the Green Profit Sharing Plan was first established in January 2007 would have requested plan documents at that time if the Plan had not been concealed from them.

178.    Neither Plaintiff Aleman nor other Class members should be prejudiced by the fact that Dr. Green concealed the existence of the Green Profit Sharing Plan from January 2007 until April 2025.

179.    Equity requires that Plaintiff Aleman and Class members be eligible for statutory penalties thirty (30) days after the time they first become participants in the Green Profit Sharing Plan and had a statutory right to request plan documents.

180.    Pursuant to ERISA § 502(c)(1)(B), Dr. Green is liable to Plaintiffs and the Class for statutory penalties of up to $110 per day for each day of noncompliance beyond the 30-day deadline of when Plaintiffs requested or could have requested Plan documents if the Green Plans had not been concealed from, in an amount costing Plaintiffs and the Class tens of millions of dollars.

30

## COUNT THREE: BREACH OF FIDUCIARY DUTY –
## FAILURE TO DISCLOSE PLAN DOCUMENTS
## (ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3))

181.    Plaintiffs re-allege and incorporate by reference paragraphs 1-48 and 88-106.

182.    Dr. Green is a fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), as he exercised discretionary authority or control over the management, administration, or operation of the Green Plans.

183.    ERISA fiduciaries are required to discharge their duties with loyalty and prudence, and to provide participants with material information regarding the plan and their rights under it.

184.    Dr. Green breached his fiduciary duties by: (1) failing to provide Plaintiff Aleman with requested documents necessary to understand and enforce her retirement benefits under he Green Plans; (2) obstructing Plaintiff Aleman's ability to make informed decisions regarding her retirement and claims under the Plans; and (3) concealing or withholding material information about the operation and funding of the Plans.

185.    Additionally, under ERISA § 412, 29 U.S.C. § 1112, every fiduciary of an employee benefit plan and every person who handles plan funds or other property is required to be bonded in an amount not less than 10% of the amount of funds handled, subject to statutory limits.

186.    Dr. Green is a fiduciary handling funds of the Green Plans within the meaning of 29 U.S.C. §§ 1002(21)(A) and 1112(a).

187.    During all or part of the relevant period, Defendants failed to obtain or maintain a fidelity bond that complied with the minimum requirements of ERISA § 412.

31

188.    The failure to maintain an adequate bond increased the risk of loss to plan participants and beneficiaries and constituted a breach of Defendants' fiduciary duties under ERISA § 404(a)(1)(A)–(B), which require fiduciaries to act prudently and solely in the interest of participants and beneficiaries.

189.    The lack of adequate bonding also prevented effective protection and redress in the event of misuse or mismanagement of plan assets, constituting further breach of duty.

190.    As a result of these breaches of fiduciary duty, Plaintiffs and the Plan have suffered actual or imminent harm, including but not limited to, the loss of statutory protection against misuse of plan assets and the increased risk of fiduciary misconduct without insurance coverage.

191.    As a direct and proximate result of Dr. Green's breach, Plaintiff Aleman has suffered harm, including but not limited to uncertainty about her pension rights, delay in obtaining benefits, and potential loss of benefits or legal remedies.

192.    Pursuant to ERISA § 502(a)(3), Plaintiff Aleman seeks appropriate equitable relief, including: (1) surcharge to compensate her for losses caused by Defendants' breach of duty; (2) declaratory relief clarifying her rights to receive full plan documentation; (3) reformation of any misleading or incomplete records or practices; (4) equitable estoppel to prevent Defendants from asserting defenses based on Plaintiff's lack of knowledge; and (5) any other relief deemed just and proper by the Court.

### COUNT FOUR: BREACH OF THE DUTY OF LOYALTY
### (ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A))

193.    Plaintiffs re-allege and incorporate by reference paragraphs 1-34 and 110-120.

32

194. Under ERISA § 404(a)(1)(A), plan fiduciaries must discharge their duties solely in the interest of participants and beneficiaries and for the exclusive purpose of: (a) providing benefits to participants and their beneficiaries; and (b) defraying reasonable expenses of administering the plan.

195. By using Green Plans' assets to advance his own financial interests—such as reducing his tax liabilities, offsetting professional debts, or benefiting his dental operations—Dr. Green acted in his own interest and not for the exclusive benefit of the Plans' participants and beneficiaries.

196. Dr. Green's conduct constitutes a breach of the fiduciary duty of loyalty.

197. As a result of this breach, the Plans and its participants suffered harm, including diminishment of the Plans' assets, misallocation of contributions, and misreporting to regulators and participants.

198. Pursuant to ERISA § 409(a) and § 502(a)(2), Plaintiffs seek relief on behalf of the Plans, including the restoration of all losses resulting from Dr. Green's breaches of fiduciary duty.

199. Plaintiffs also seek appropriate equitable relief under ERISA § 502(a)(3), including surcharge, disgorgement, rescission, and any other relief necessary to remedy the fiduciary breach.

## COUNT FIVE: PROHIBITED TRANSACTIONS – PARTY IN INTEREST
### ERISA §§ 406(a), 29 U.S.C. § 1106(a)

200. Plaintiffs re-allege and incorporate by reference paragraphs 1-34, 52-53, and 110-120.

201. The Green Plans are employee pension benefit plan governed by ERISA, established and maintained by Dr. Green, who also serves as Plan Sponsor and the Plan Administrator.

202. Under ERISA § 3(14), 29 U.S.C. § 1002(14), Dr. Green is a "party in interest" to the Plan, as the employer whose employees are covered by the Plans and as a fiduciary and administrator of the Plans.

203. ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits a plan fiduciary from causing the plan to engage in a transaction with a party in interest if such transaction involves, in pertinent part, the transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan.

204. Dr. Green caused the Plan to engage in one or more prohibited transactions by using Plan assets for the employer's own benefit, including but not limited to: (1) improperly applying Plan assets to reduce the employer's tax liability; (2) redirecting contributions or investment proceeds in a manner intended to offset professional obligations or debt; (3) treating plan funds or forfeitures as employer-owned property; and/or (4) failing to properly segregate Plan assets from the employer's general accounts.

205. These transactions were not for the exclusive benefit of the Green Plans' participants or beneficiaries and were undertaken to benefit Dr. Green financially, including to reduce his tax liabilities and operating expenses.

206. Dr. Green is liable under ERISA § 409(a), 29 U.S.C. § 1109(a), for all losses to the Green Plans resulting from these prohibited transactions and must restore such losses and any profits gained through the use of the Plans' assets.

207. Plaintiffs further seek appropriate equitable relief under ERISA § 502(a)(3), including surcharge, restitution, rescission, disgorgement of profits, and any other relief the Court deems just and proper.

**COUNT SIX: FIDUCIARY PROHIBITED TRANSACTIONS – SELF-DEALING**
**(ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1))**

208. Plaintiffs re-allege and incorporate by reference paragraphs 1-34 and 110, 113-114, and 116-119.

209. Plaintiffs are participants, or eligible to be participants, in the Green Plans, which are employee pension benefit plans governed by ERISA.

210. Dr. Green is both the sponsor and administrator of the Plans, and has exercised discretionary authority and control over the Plan's management, administration, and assets.

211. As a result of this authority and control, Dr. Green is a fiduciary of the Green Plans within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21).

212. ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), provides that a fiduciary shall not deal with the assets of the plan in his own interest or for his own account.

213. Dr. Green violated § 406(b)(1) by knowingly using Plan assets in transactions that served his own personal financial interests, including by: (a) applying Green Plan funds to reduce or satisfy his own personal income tax or self-employment tax obligations; (b) structuring or misclassifying Green Plan contributions or distributions to conceal taxable income or defer personal tax liability; (c) temporarily retaining participant contributions as working capital or liquidity for personal or business use; and (d) reimbursing himself or his business from Green Plans' assets for expenses not properly chargeable to the Plan.

35

214.    These acts constitute self-dealing transactions in violation of ERISA § 406(b)(1) because they involved Dr. Green acting in his capacity as the Green Plans' fiduciary and using Plan assets for his own account and financial advantage.

215.    The prohibited conduct was not incidental, inadvertent, or *de minimis*, but reflected an intentional and repeated misuse of fiduciary authority to benefit Dr. Green personally at the expense of the Plans' participants or those eligible to enroll in the Plans.

216.    As a result of Dr. Green's self-dealing, the Green Plans suffered financial harm, including the diminution of the Plans' assets and the diversion of participant funds for non-retirement, non-benefit purposes.

217.    Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), and  409(a), 29 U.S.C. § 1109(a), Plaintiffs seeks appropriate relief on behalf of the Plan, including: (a) restoration of all losses to the Plan resulting from the Defendant's violations; (b) disgorgement of any profits or benefits derived by Defendant from the improper use of Plan assets; and (c) any other legal or equitable relief the Court deems just and proper.

218.    Plaintiffs further seek appropriate equitable relief under ERISA § 502(a)(3), including surcharge, restitution, rescission, disgorgement of profits, and any other relief the Court deems just and proper.

### COUNT SEVEN – EXCLUSION FROM PARTICIPATION
### (ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)))

219.    Plaintiffs re-allege and incorporate by reference paragraphs 1-38, and 44, 48, 50, 61-62, 78, 101, and 106.

220. ERISA § 404(a), 29 U.S.C. § 1104(a), imposes on fiduciaries the duty to act prudently and solely in the interest of participants and beneficiaries, including the duty to provide accurate information regarding plan rights and options.

221. ERISA § 102, 29 U.S.C. § 1022, and ERISA § 104(b)(1), 29 U.S.C. § 1024(b)(1), require plan administrators to furnish Summary Plan Descriptions (SPDs) and other plan documents to participants upon request and at specific times, including at or near the time of eligibility.

222. Despite Plaintiffs' eligibility and employment, Dr. Green failed to provide Plaintiffs with the required enrollment materials, application forms, or other necessary information to effectuate enrollment in the Green Plans. Plaintiffs never received instructions, forms, or access to participate.

223. Plaintiffs were eligible employees during their employment with Dr. Green and met all known criteria for participation in all of the retirement and pension benefit plans maintained by Dr. Green.

224. Plaintiffs were never provided the required enrollment forms or materials by Dr. Green, who was acting as the fiduciary of the Green Plans. This omission prevented Plaintiffs from enrolling in the Plans and deprived Plaintiffs of retirement benefits and employer contributions.

225. As a direct and proximate result of Defendants' fiduciary breaches and violations of ERISA, Plaintiffs were deprived of the opportunity to enroll in the Green Plans, accrue pension service, contribute to the 401(k), receive employer matching contributions, and enjoy the retirement benefits otherwise available to participants

226. Dr. Green's failure to provide enrollment information violated his fiduciary duties under ERISA § 404(a) and entitles Plaintiffs to appropriate equitable relief under § 502(a)(3), including surcharge, restitution, or reformation of the Plans to reflect Plaintiff's rightful participation.

227. Because Plaintiffs were never enrolled, they cannot claim benefits under ERISA Section 502(a)(1)(B), so ERISA Section 502(a)(3) is the only viable claim.

**COUNT EIGHT: BREACH OF FIDUCIARY DUTY**
**DISCRIMINATORY FAVORING OF HIGHLY COMPENSATED EMPLOYEES**
**(ERISA § 404(A)(1), 29 U.S.C. § 1104(A)(1))**

228. Plaintiffs re-allege and incorporate by reference paragraphs 1-34, 86, and 121-133.

229. Plaintiffs are participants in the Green Profit Sharing Plan or were entitled to participate in the Green 401(k) Plan or Green Pension Plan, defined contribution and benefit retirement plans governed by ERISA and intended to be a tax-qualified plan under Internal Revenue Code § 401(a).

230. Dr. Green is the Green Plans' sponsor and administrator and exercises discretionary authority over the Plans' management and administration. As such, Dr. Green is a fiduciary under ERISA § 3(21), 29 U.S.C. § 1002(21).

231. ERISA § 404(a)(1) requires fiduciaries to discharge their duties solely in the interest of participants and beneficiaries, for the exclusive purpose of providing benefits and defraying reasonable plan expenses, and in accordance with the documents and instruments governing the plan, insofar as they are consistent with ERISA.

232. The Green Plans are subject to Internal Revenue Code nondiscrimination requirements, including: (a) IRC § 401(a)(4) (nondiscrimination in contributions or benefits);

(b) IRC § 401(k) and (m) (ADP/ACP nondiscrimination testing for elective deferrals and matching contributions); and (c) IRC § 410(b) (minimum coverage testing to ensure broad participation).

233. Dr. Green violated these nondiscrimination provisions by operating the Plan in a manner that systematically favored highly compensated employees (HCEs), mostly himself, over non-highly compensated employees (NHCEs), including Plaintiffs.

234. Such unlawful conduct included: (a) designing or amending the Green Plans' formulas and contributions to disproportionately benefit HCEs; (b) failing or refusing to perform annual nondiscrimination testing or to correct known testing failures; (c) making or allowing discretionary employer contributions solely to HCE accounts; (d) providing enhanced access to investment options or contribution limits for HCEs; (e) deliberately excluding or discouraging NHCEs from participating, deferring, or receiving employer contributions; and (f) failing to make corrective distributions or adjustments required by failed nondiscrimination tests.

235. Dr. Green's discriminatory conduct was not an isolated error or operational failure, but a deliberate or knowing disregard of applicable nondiscrimination rules, undertaken to benefit himself at the expense of rank-and-file employees.

236. This conduct breached Dr. Green s fiduciary duties under ERISA § 404(a)(1) because it: (a) favored the interests of HCEs, including himself, over the interests of all participants; (b) violated the requirement that plan operations follow qualification rules and the governing documents; (c) exposed the Green Plans and its participants to the risk of disqualification and tax consequences; and (d) resulted in lower contributions and retirement savings for Plaintiffs and similarly situated NHCEs.

237.    As a direct and proximate result of Dr. Green's fiduciary breach: (a) the Green Plans have failed, or will fail, nondiscrimination tests and will lose its qualification status, or is at serious risk of doing so; (b) Plaintiffs and Class members have been deprived of contributions and tax-deferred savings; and (c) the Green Plans are subject to potential IRS penalties, correction costs, and legal exposure.

238.    Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), Plaintiffs seeks relief on behalf of the Plan to: (a) restore losses resulting from the fiduciary's breach; (b) require disgorgement of any unlawful or excessive benefits received by HCEs or fiduciaries, including from Dr. Green himself; (c) compel compliance with nondiscrimination and correction requirements; (d) enjoin further violations of fiduciary duty; and (e) award such other legal or equitable relief as the Court deems appropriate.

## COUNT NINE: INTERFERENCE WITH PROTECTED RIGHTS
### (ERISA Section 510, 29 U.S.C. § 1140)

239.    Plaintiffs re-allege and incorporate by reference paragraphs 1-34 and 70-72.

240.    In pertinent part ERISA Sections 510, 29 U.S.C. § 1140, provides that "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan."

241.    Plaintiffs were and are participants in the Green Proft Sharing Plan, an employee pension benefit plan governed by ERISA.

242.    Under the Plan and ERISA § 203(a), 29 U.S.C. § 1053(a), Plaintiffs are entitled to nonforfeitable benefits once vested under the required vesting schedule.

243. Upon seeking distribution benefits under the Plan, Dr. Green conditioned the provision of Plaintiffs vested retirement benefits on Plaintiffs signing a release agreement.

244. The proposed release required Plaintiffs to waive any and all current and future claims under ERISA.

245. The release was presented in a manner that was coercive and not knowing or voluntary, and Plaintiffs' refusal to sign the release resulted in the delay or denial of vested benefits.

246. Defendant's conduct constitutes an unlawful attempt to interfere with Plaintiff's attainment and exercise of rights under the Plan and ERISA, in violation of ERISA § 510.

247. Plaintiffs seek appropriate equitable and injunctive relief under ERISA § 502(a)(3), including: (a) a declaration that the release is null and void; (b) an injunction barring Dr. Green from conditioning vested benefits on the waiver of legal rights; (c) an order requiring the immediate payment of all owed benefits without condition; and (d) other appropriate equitable relief to redress the violation and prevent its recurrence.

### COUNT TEN: VIOLATIONS OF ERISA § 502(c)(1)(A)
### Failure To Furnish Benefit Statements Required By ERISA § 105

248. Plaintiffs re-allege and incorporate by reference paragraphs 1-34 and 99-109.

249. Plaintiffs are participants in an employee benefit plan governed by ERISA, as defined in 29 U.S.C. § 1002(7).

250. The Green Profit Sharing Plan and Green 401(k) Plans at issue are individual account plan, as defined by 29 U.S.C. § 1002(34).

251. Dr. Green is the plan administrator of these Plans, as defined in 29 U.S.C. § 1002(16)(A), and is therefore responsible for complying with the reporting and disclosure requirements of ERISA.

252. ERISA § 105(a) (29 U.S.C. § 1025(a)) requires the administrator of an individual account plan to furnish benefit statements to plan participants: (a) at least once each calendar quarter if the participant has the right to direct investments; and (b) at least once each calendar year otherwise.

253. ERISA § 502(c)(1)(A) (29 U.S.C. § 1132(c)(1)(B)) provides that a plan administrator who "fails or refuses to file the annual report required to be filed with the Secretary... or to notify participants and beneficiaries of the availability of the report or other material . . . may in the court's discretion be personally liable...," for statutory penalties.

254. Despite the clear requirements of ERISA § 105(a), Defendant failed to provide Plaintiffs with the required periodic benefit statements, and failed to notify Plaintiffs of their availability, during the Class Period.

255. The failure of Dr. Green to provide such benefit statements and notices constitutes a violation of ERISA § 105(a), subject to enforcement under ERISA § 502(c)(1)(A).

256. As a result of Dr. Green's failure, Plaintiffs have been deprived of critical information regarding the status, value, and investment of their retirement benefits and have suffered informational injury, confusion, and loss of opportunity to make informed financial decisions, including those surrounding divorce, bankruptcy, and death.

257. Other members of the Class were eligible to receive benefit statements as early as when the Green Profit Sharing Plan was first established in January 2007 and when they were eligible to participate in the Plan.

258. Neither Plaintiff Aleman nor other Class members should be prejudiced by the fact that Dr. Green concealed the existence of the Green Profit Sharing Plan from January 2007 until April 2025.

259.    Equity requires that Plaintiff Aleman and Class members be eligible for statutory penalties from the time they first become participants in the Green Profit Sharing Plan and had a statutory right to receive Plan benefit statements.

260.    Pursuant to ERISA § 502(c)(1)(B), Dr. Green is liable to Plaintiffs and the Class for statutory penalties of up to $110 per day for each day of noncompliance, in an amount costing Plaintiffs and the Class tens of millions of dollars.

261.    Plaintiffs requests that the Court: (1) declare that Defendant violated ERISA §§ 105(a) and 502(c)(1)(A); (2) award statutory penalties in an amount up to $110 per day for each day the violation continued, as permitted by 29 C.F.R. § 2575.502c-1; and (c) grant such other and further relief as the Court deems just and proper.

WHEREFORE, Plaintiffs pray that judgment be entered and requests the following relief:

A.    A determination that this action may proceed as a class action under Rule 23(b)(1), or in the alternative Rule 23(b)(2), of the Federal Rules of Civil Procedure;

B.    Designation of Plaintiffs as Class Representatives and designation of Plaintiffs' counsel as Class Counsel;

C.    A Declaration Dr. Green is a fiduciary, breached his fiduciary duties of loyalty and prudence, and engaged in fiduciary and party-in-interest prohibited transactions, causing harm to the Green Plans' participants and beneficiaries;

D.    An Order compelling Dr. Green to make good to Plaintiffs all losses to the Green Plans resulting from Dr. Green's fiduciary breaches and prohibited transactions, including restoring to Plaintiffs all losses resulting from failing to disclose the existence of the Green Plans to Plaintiffs and Class, all profits Dr. Green made through use of the Plans' assets, and restoring to the Plaintiffs and Class all profits which the Plaintiffs and Class would have made if the Dr. Green had not engaged in fiduciary breaches or prohibited transactions;

E.    An Order requiring Dr. Green to disgorge all profits received from, or in respect of, the Green Plans, and/or equitable relief pursuant to 29 U.S.C. § 1132(a)(3) in the form of an accounting for profits, imposition of constructive trust, or

surcharge against Dr. Green as necessary to effectuate relief, and to prevent Dr. Green's unjust enrichment;

F.    An Order enjoining Dr. Green from any further prohibited transactions or violations of his ERISA fiduciary responsibilities, obligations, and duties, with regard to the Green Plans, including through the use of illegal releases;

G.    Other equitable relief to redress Dr. Green's illegal practices and to enforce the provisions of ERISA as may be appropriate;

H.    Impose statutory penalties of $110 per day per participant for failing to adequately respond to any of the Plaintiffs' document requests for the Green Plan documents, for concealing the existence of the Green Plans making such document requests impossible, and for failing to provide participant statements and enrollment forms since the establishment of each of the Green Plans;

I.    Order Dr. Green to provide all requested Green Plan documents in their original an unaltered form.

J.    Declare that Plaintiffs were entitled to participate in all of the Green Plans and order reformation of those Plans to include Plaintiffs and Class members retroactively, with appropriate credits and contributions.

K.    Order Dr. Green to make Plaintiffs whole for any losses caused by their exclusion from the Green Plans, including lost benefits, earnings, and equitable surcharge;

L.    Declare that Dr. Green breached his fiduciary duties under ERISA §§ 404 and 412 by failing to maintain a statutorily adequate fidelity bond;

M.    Declare that Dr. Green, as Plan Administrator, violated ERISA § 105(a), 29 U.S.C. § 1025(a), by failing to provide required benefit statements to Plaintiffs and the Class;

N.    Statutory penalties under ERISA § 502(c)(1)(A) and (B), 29 U.S.C. § 1132(c)(1)(A) and (B), in an amount up to $110 per day for each day that Defendant failed to provide the required disclosures to Plaintiffs and the Class, as determined by the Court and permitted under 29 C.F.R. § 2575.502c-1.

O.    An award of pre-judgment interest;

P.    An award of attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and

Q.    Such other and further relief as the Court deems equitable and just.

44

Date:  June 9, 2025

Respectfully submitted,

/s/ *Dean Burri*
Dean A. Burri, Esq., LL.M.
Florida Bar Number: 102981
burri@burri-law.com
BURRI LAW, P.A.
16445 Collins Ave WS1B
Sunny Isles Beach, Florida 33160
Telephone: (727) 688-3600
Attorneys for Plaintiffs and Proposed Class


/s/ *Roderick Coleman*
Roderick Coleman, Esq.
Florida Bar Number: 371270
rfc@colemanattorneys.com
kl@colemanattorneys.com
COLEMAN LAW, PLLC
400 S. Dixie Highway, #121
Boca Raton, Florida 33432
Telephone: (561)620-9292
Attorney for Plaintiffs and Proposed Class